CSM LEGAL, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
PEDRO CEVALLOS, *individually and on*
*behalf of others similarly situated,*

|  |  |
|---|---|
| *Plaintiff*, | **COMPLAINT** |
| -against- | **COLLECTIVE ACTION UNDER** **29 U.S.C. § 216(b)** |
| MANGIA 23RD STREET LLC (D/B/A MANGIA), MANGIA 57, INC. (D/B/A MANGIA), SASHA MUNIAK, PAWEL KOSZALKA, and PIOTR W LAKOTA , | **ECF Case** |
| *Defendants.* | |

-------------------------------------------------------X

    Plaintiff Pedro Cevallos ("Plaintiff Cevallos " or "Mr. Cevallos "), individually and on behalf of others similarly situated, by and through his attorneys, CSM Legal, P.C., upon his knowledge and belief, and as against Mangia 23rd Street LLC (d/b/a Mangia), Mangia 57, Inc. (d/b/a Mangia), ("Defendant Corporations"), Sasha Muniak, Pawel Koszalka, and Piotr W Lakota, ("Individual Defendants"), (collectively, "Defendants"), alleges as follows:

## NATURE OF ACTION

    1.    Plaintiff Cevallos a former employee of Defendants Mangia 23rd Street LLC (d/b/a Mangia), Mangia 57, Inc. (d/b/a Mangia), Sasha Muniak, Pawel Koszalka, and Piotr W Lakota.

    2.     Defendants own, operate, or control Italian Restaurants, located in various locations in Manhattan under the name "Mangia."

3.    Upon information and belief, individual Defendants Sasha Muniak, Pawel Koszalka, and Piotr W Lakota, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the restaurant as a joint or unified enterprise.

4.    Plaintiff Cevallos was employed as a food preparer, catering worker, and delivery worker at the restaurants located at 50 W 57th St, New York, NY 10019, and 22 W 23rd Street, New York, NY 10010.

5.    Plaintiff Cevallos was ostensibly employed as a delivery worker. However, he was required to spend a considerable part of his work day performing non-tipped duties, including but not limited to food and catering preparation and taking out the trash (hereafter the "non-tipped duties").

6.    At all times relevant to this Complaint, Plaintiff Cevallos worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation for the hours that he worked.

7.    Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiff Cevallos appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.    Defendants employed and accounted for Plaintiff Cevallos as a delivery worker in their payroll, but in actuality his duties required a significant amount of time spent performing the non-tipped duties alleged above.

9.    However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiff Cevallos' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day. 12 N.Y. C.R.R. §146.

10. Upon information and belief, Defendants employed the policy and practice of disguising Plaintiff Cevallos' actual duties in payroll records by designating him as a delivery worker instead of as a non-tipped employee. This allowed Defendants to avoid paying Plaintiff Cevallos at the minimum wage rate and enabled them to pay him at the tip-credit rate.

11. Defendants' conduct extended beyond Plaintiff Cevallos to all other similarly situated employees.

12. At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff Cevallos and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

13. Plaintiff Cevallos now brings this action on behalf of himself, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

14. Plaintiff Cevallos seeks certification of this action as a collective action on behalf of himself, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiff Cevallos' state law claims under 28 U.S.C. § 1367(a).

16.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate Italian Restaurants located in this district. Further, Plaintiff Cevallos was employed by Defendants in this district.

## **PARTIES**

### *Plaintiff*

17.     Plaintiff Pedro Cevallos ("Plaintiff Cevallos" or "Mr. Cevallos") is an adult individual residing in Queens County, New York.

18.     Plaintiff Cevallos was employed by Defendants at Mangia 57th and Mangia 23rd from approximately February 2013 until on or about July 22, 2022.

19.     Plaintiff Cevallos consents to being a party plaintiff pursuant to 29 U.S.C. § 216(b), and brings these claims based upon the allegations herein as a representative party of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

### *Defendants*

20.     At all relevant times, Defendants own, operate, or control Italian Restaurants, located at 50 W 57th St, New York, NY 10019 and 22 W 23rd Street, New York, NY 10010 under the name "Mangia."

21.     Upon information and belief, Mangia 23rd Street LLC (d/b/a Mangia) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 22 W 23rd Street, New York, NY 10010.

22.    Upon information and belief, Mangia 57, Inc. (d/b/a Mangia) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 50 W 57th St, New York, NY, 10019.

23.    Defendant Sasha Muniak is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Sasha Muniak is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Sasha Muniak possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiff Cevallos, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

24.    Defendant Pawel Koszalka is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Pawel Koszalka is sued individually in his capacity as a manager of Defendant Corporations. Defendant Pawel Koszalka possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiff Cevallos, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

25.    Defendant Piotr W Lakota is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Piotr W Lakota is sued individually in his capacity as a manager of Defendant Corporations. Defendant Piotr W Lakota possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of

Defendants, including Plaintiff Cevallos, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

26.     Defendants operate Italian Restaurants located in multiple neighborhoods in Manhattan.

27.     Individual Defendants, Sasha Muniak, Pawel Koszalka, and Piotr W Lakota, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, or control significant functions of Defendant Corporations.

28.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

29.     Each Defendant possessed substantial control over Plaintiff Cevallos' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiff Cevallos, and all similarly situated individuals, referred to herein.

30.     Defendants jointly employed Plaintiff Cevallos (and all similarly situated employees) and are Plaintiff Cevallos' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

31.     In the alternative, Defendants constitute a single employer of Plaintiff Cevallos and/or similarly situated individuals.

32.     Upon information and belief, Individual Defendant Sasha Muniak operates Defendant Corporations as either alter egos of himself and/or failed to operate Defendant Corporations as entities legally separate and apart from himself, by among other things:

a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

b)  defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)  transferring assets and debts freely as between all Defendants,

d)  operating Defendant Corporations for his own benefit as the sole or majority shareholder,

e)  operating Defendant Corporations for his own benefit and maintaining control over these corporations as closed Corporations,

f)  intermingling assets and debts of his own with Defendant Corporations,

g)  diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect his own interest, and

h)  Other actions evincing a failure to adhere to the corporate form.

33.    At all relevant times, Defendants were Plaintiff Cevallos' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiff Cevallos, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiff Cevallos' services.

34.    In each year from 2017 to 2022, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

35.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiff*

36.     Plaintiff Cevallos is a former employee of Defendants who ostensibly was employed as a catering worker and delivery worker. However, he spent over 20% of each shift performing the non-tipped duties described above.

37.     Plaintiff Cevallos seeks to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Pedro Cevallos*

38.     Plaintiff Cevallos was employed by Defendants from approximately February 2013 until on or about July 22, 2022.

39.     Defendants ostensibly employed Plaintiff Cevallos as a delivery worker.

40.     However, Plaintiff Cevallos was also required to spend a significant portion of his workday performing the non-tipped duties described above.

41.     Although Plaintiff Cevallos ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

42.     Plaintiff Cevallos regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

43.     Plaintiff Cevallos' work duties required neither discretion nor independent judgment.

44.     Throughout his employment with Defendants, Plaintiff Cevallos regularly worked in excess of 40 hours per week.

45.    From approximately May 2017 until on or about December 2019, Plaintiff Cevallos worked as a food preparer, catering and delivery worker, from approximately 6:00 a.m. until on or about 2:30 p.m. to 3:00 p.m., 3 days a week and from approximately 5:00 a.m. until on or about 2:30 p.m. to 3:00 p.m., 2 days a week (typically 51 to 56 hours per week).

46.    From approximately January 2020 until on or about June 2020, Plaintiff Cevallos worked as a food preparer, catering and delivery worker, from approximately 6:00 a.m. until on or about 2:00 p.m. to 3:00 p.m., 3 days a week and from approximately 5:00 a.m. until on or about 2:00 p.m. to 3:00 p.m., 2 days a week (typically 50 to 56 hours per week).

47.    From approximately September 2021 until on or about February 2022, Plaintiff Cevallos worked at the 23rd Mangia location as a food preparer, catering and delivery worker from approximately 6:00 a.m. until on or about 2:30 p.m. to 3:00 p.m., 3 days a week and from approximately 5:00 a.m. until on or about 2:30 p.m. to 3:00 p.m., 2 days a week (typically 51 to 56 hours per week).

48.    Throughout his employment, Defendants paid Plaintiff Cevallos his wages in a combination of cash and check.

49.    From approximately May 2017 until on or about July 2022, Defendants paid Plaintiff Cevallos $10.00 per hour.

50.    Defendants never granted Plaintiff Cevallos any breaks or meal periods of any kind.

51.    Nevertheless, Defendants deducted 30 minutes from Plaintiff Cevallos' weekly paycheck for meals he never ate.

52.    Plaintiff Cevallos was never notified by Defendants that his tips were being included as an offset for wages.

53.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Cevallos' wages.

54.     Although Plaintiff Cevallos was required to keep track of his time, Defendants did not accurately reflect his actual hours worked because the time tracking system would often fail.

55.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Cevallos regarding overtime and wages under the FLSA and NYLL.

56.     Defendants did not provide Plaintiff Cevallos an accurate statement of wages, as required by NYLL 195(3).

57.     Upon information and belief, Defendants adjusted Plaintiff Cevallos' paystubs so that they reflected inaccurate wages and hours worked.

58.     Defendants did not give any notice to Plaintiff Cevallos, in English and in Spanish (Plaintiff Cevallos' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

59.     Defendants required Plaintiff Cevallos to purchase "tools of the trade" with his own funds—including Metro card fare to do deliveries.

*Defendants' General Employment Practices*

60.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff Cevallos (and all similarly situated employees) to work in excess of 40 hours a week without paying him appropriate minimum wage and overtime compensation as required by federal and state laws.

61.     Plaintiff Cevallos was a victim of Defendants' common policy and practices which violate his rights under the FLSA and New York Labor Law by, *inter alia*, not paying him the wages he was owed for the hours he worked.

62.    Defendants' pay practices resulted in Plaintiff Cevallos not receiving payment for all his hours worked and resulted in Plaintiff Cevallos' effective rate of pay falling below the required minimum wage rate.

63.    Defendants required Plaintiff Cevallos and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

64.    Plaintiff Cevallos and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

65.    Plaintiff Cevallos' duties were not incidental to his occupation as a tipped worker, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

66.    Plaintiff Cevallos and all other tipped workers were paid at the lowered tip-credit rate by Defendants.

67.

68.    However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and Plaintiff Cevallos' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

69.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

70.     In violation of federal and state law as codified above, Defendants classified Plaintiff Cevallos and other tipped workers as tipped employees, and paid them at a rate that was at the lowered tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

71.     Defendants failed to inform Plaintiff Cevallos who received tips that Defendants intended to take a deduction against Plaintiff Cevallos' earned wages for tip income, as required by the NYLL before any deduction may be taken.

72.     Defendants failed to inform Plaintiff Cevallos who received tips, that his tips were being credited towards the payment of the minimum wage.

73.     Defendants failed to maintain a record of tips earned by Plaintiff Cevallos who worked as a delivery worker for the tips he received. Defendants' time keeping system did not reflect the actual hours that Plaintiff Cevallos worked.

74.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

75.     Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

76.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiff Cevallos (and similarly situated individuals) worked, and to avoid paying Plaintiff Cevallos properly for his full hours worked.

77.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

78.     Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiff Cevallos and other similarly situated former workers.

79.     Defendants failed to provide Plaintiff Cevallos and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

80.     Defendants failed to provide Plaintiff Cevallos and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

81.     Plaintiff Cevallos brings his FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b),

on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

82.     At all relevant times, Plaintiff Cevallos and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

83.     The claims of Plaintiff Cevallos stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

84.     Plaintiff Cevallos repeats and realleges all paragraphs above as though fully set forth herein.

85.     At all times relevant to this action, Defendants were Plaintiff Cevallos' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiff Cevallos (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

86.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

87.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

88.    Defendants failed to pay Plaintiff Cevallos (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

89.    Defendants' failure to pay Plaintiff Cevallos (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

90.    Plaintiff Cevallos (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

91.    Plaintiff Cevallos repeats and realleges all paragraphs above as though fully set forth herein.

92.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiff Cevallos (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

93.    Defendants' failure to pay Plaintiff Cevallos (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

94.    Plaintiff Cevallos (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

95.    Plaintiff Cevallos repeats and realleges all paragraphs above as though fully set forth herein.

96.    At all times relevant to this action, Defendants were Plaintiff Cevallos' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiff Cevallos, controlled the terms and conditions of his employment, and determined the rates and methods of any compensation in exchange for his employment.

97.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiff Cevallos less than the minimum wage.

98.    Defendants' failure to pay Plaintiff Cevallos the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

99.    Plaintiff Cevallos was damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF THE OVERTIME PROVISIONS**

**OF THE NEW YORK STATE LABOR LAW**

100.    Plaintiff Cevallos repeats and realleges all paragraphs above as though fully set forth herein.

101.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiff Cevallos overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

102.    Defendants' failure to pay Plaintiff Cevallos overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

103.    Plaintiff Cevallos was damaged in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**

**VIOLATION OF THE NOTICE AND RECORDKEEPING**

## REQUIREMENTS OF THE NEW YORK LABOR LAW

104.     Plaintiff Cevallos repeats and realleges all paragraphs above as though fully set forth herein.

105.     Defendants failed to provide Plaintiff Cevallos with a written notice, in English and in Spanish (Plaintiff Cevallos' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

106.     Defendants are liable to Plaintiff Cevallos in the amount of $5,000, together with costs and attorneys' fees.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

107.     Plaintiff Cevallos repeats and realleges all paragraphs above as though fully set forth herein.

108.     With each payment of wages, Defendants failed to provide Plaintiff Cevallos with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the

regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

109.    Defendants are liable to Plaintiff Cevallos in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

110.    Plaintiff Cevallos repeats and realleges all paragraphs above as though fully set forth herein.

111.    Defendants required Plaintiff Cevallos to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform his job, further reducing his wages in violation of the FLSA and NYLL. 29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

112.    Plaintiff Cevallos was damaged in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

### UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION

### OF THE NEW YORK LABOR LAW

113.    Plaintiff Cevallos repeats and realleges all paragraphs above as though fully set forth herein.

114.    At all relevant times, Defendants were Plaintiff Cevallos' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

115.    Defendants made unlawful deductions from Plaintiff Cevallos' wages including, but not limited to, deductions for meals he never ate.

116.     The deductions made from Plaintiff Cevallos' wages was not authorized or required by law.

117.     Through their knowing and intentional efforts to take unauthorized deductions from Plaintiff Cevallos' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

118.     Plaintiff Cevallos was damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Cevallos respectfully requests that this Court enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff Cevallos and the FLSA Class members;

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff Cevallos and the FLSA Class members;

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiff Cevallos' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiff Cevallos and the FLSA Class members;

(f)    Awarding Plaintiff Cevallos and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)    Awarding Plaintiff Cevallos and the FLSA Class members liquidated damages in an amount equal to 100% of his damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)    Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff Cevallos ;

(i)    Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff Cevallos ;

(j)    Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiff Cevallos 's compensation, hours, wages and any deductions or credits taken against wages;

(k)    Declaring that Defendants' violations of the provisions of the NYLL were willful as to Plaintiff Cevallos ;

(l)    Awarding Plaintiff Cevallos damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages as applicable

(m)    Awarding Plaintiff Cevallos damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(n)     Awarding Plaintiff Cevallos liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(o)     Awarding Plaintiff Cevallos and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(p)      Awarding Plaintiff Cevallos and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(q)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(r)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

 Plaintiff Cevallos demands a trial by jury on all issues triable by a jury.

Dated: New York, New York

May 1, 2023

CSM LEGAL, P.C

By:      /s/ Catalina Sojo, Esq.
Catalina Sojo [CS-5779517]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiff*